879 A.2d 185

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Albert S. SHIFFLER, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 30, 2004.

Decided July 22, 2005.

Mary Jean Glick, Esq., James Jude Karl, Esq., for Albert S. Shiffler.

Peter Rosalsky, Esq., Philadelphia, for Defender Association of Philadelphia.

Donald R. Totaro, Esq., Kelly M. Sekula, Esq., for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR and BAER, JJ.

## OPINION

Justice CASTILLE.

This Court granted review of the order of the Superior Court vacating appellant's judgment of sentence and remanding the case for resentencing, to consider whether, under the Sentencing Code's "three strikes law," appellant should have been considered a second-time violent crime offender and sentenced to a mandatory minimum term of ten years of imprisonment; or considered a third-time violent crime offender and sentenced to a mandatory minimum term of twenty-five years of imprisonment. *See* 42 Pa.C.S. § 9714. The more narrow question upon which we granted review here was one left unanswered by our decision in *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003): whether the statute reflects a "recidivist philosophy" and should be construed to allow for heightened punishment for repeat offenders only where their convictions for crimes of violence, and corresponding terms of incarceration, are sequential and each is separated by an intervening opportunity to reform. For the following reasons, we answer that question in the affirmative, and thus, we vacate the order of the Superior Court and remand this matter to the trial court for re-sentencing consistent with this opinion.

On December 26, 2001, at approximately 1:45 a.m., appellant unlawfully entered the home of Robert and Carolyn Wegner in Ephrata Borough, Lancaster County, Pennsylvania, while the couple was asleep. The Wegners were awakened to find appellant in their bedroom, walking around their bed. When appellant exited the house, the Wegners called emergency services, and Officer Christopher McKim of the Ephrata Borough Police Department was dispatched to the scene of the crime. After arriving at the Wegners' residence, Officer McKim found appellant hiding on the Wegners' porch and ordered him to put his hands up, at which point appellant fled.

Officer McKim gave chase and eventually subdued and arrested appellant. During the arrest, appellant caused abrasions to Officer McKim's right eye and left calf and bit the officer's finger, resulting in a puncture wound. While in the Wegners' home, appellant stole approximately $76.00 in cash and a woman's brassiere.

Appellant was charged with burglary,[1] aggravated assault,[2] theft,[3] and resisting arrest,[4] and on June 25, 2002, entered an open guilty plea to all of the charges. The trial court accepted appellant's plea, and on that same date, the Commonwealth filed its Notice of Intent to Seek Mandatory Sentencing. On September 9, appellant filed a "Motion for the Appropriate Determination of Applicable Prior Offenses."

On October 1, 2002, the trial court held a sentencing hearing, where the Commonwealth introduced evidence that on May 12, 1997, appellant pled guilty in a separate criminal case to three separate charges of burglary.[5] The Commonwealth argued that appellant should be sentenced as a third-time offender under Section 9714(a)(2). Appellant urged that his sentences for those prior convictions were "totally concurrent" and that, therefore, the offenses "should be considered as one conviction" for purposes of Section 9714 and that he was only a second-time offender, pursuant to subsection (a)(1) of the statute. The trial court agreed with appellant and, in addition, further reduced appellant's sentence because it found that he had rebutted the presumption of "high risk dangerousness." Accordingly, the court imposed a sentence of five to ten years imprisonment for the burglary charge; a concurrent sentence of two to four years imprisonment for the aggravated

1. 18 Pa.C.S. § 3502(a).

2. 18 Pa.C.S. § 2702(a)(3).

3. 18 Pa.C.S. § 3921(a).

4. 18 Pa.C.S. § 5104.

5. One of the charges stemmed from a burglary committed on October 5, 1996, and the remaining two charges stemmed from two separate burglaries both committed on February 16, 1997. Appellant pleaded guilty to each charge on the same day and was sentenced to three terms of eleven and one half to twenty-three months of imprisonment, to run concurrently.

assault charge; a consecutive sentence of two years probation for the resisting arrest charge; and restitution in the amount of $12.00.[6,7] The Commonwealth filed a timely notice of appeal to the Superior Court.

In a published opinion, a panel majority of the Superior Court vacated appellant's sentence and remanded, holding that the trial court should have treated appellant as a third-time offender and should have sentenced him to a twenty-five year mandatory minimum term under subsection (a)(2). The panel acknowledged that although appellant had pleaded guilty to the three prior burglaries on the same day and received concurrent sentences for those offenses, the offenses constituted separate "strikes" for purposes of Section 9714. *Commonwealth v. Shiffler*, 833 A.2d 1128, 1129 (Pa.Super.2003) ("[T]he statutory language treats each prior conviction as a separate offense, even though the plea was consolidated."). The panel accepted the Commonwealth's argument that the statute is free from ambiguity, rejected appellant's recidivist philosophy argument and held that, "[b]ecause [appellant] was guilty of at least two prior enumerated violent crimes—namely, burglaries of occupied residences on two separate days—he has at least two prior convictions for purposes of the 'three strikes' law." *Id.* at 1131.

In his concurring and dissenting opinion, President Judge Emeritus McEwen agreed with the trial court that appellant should be sentenced as a second-time offender under Section 9714(a)(1). P.J.E. McEwen stated that, "[t]he purpose of

**6.** In its opinion, the trial court requested a remand, stating that it should have sentenced appellant to the ten-year mandatory minimum sentence, applicable to second-time offenders, under Section 9714(a)(1). In so doing, the court apparently acknowledged, albeit without explanation, its error in applying the "high risk dangerousness" presumption, and allowing appellant to rebut it, when the statute no longer calls for such a presumption and rebuttal, but rather, simply mandates a ten-year term. *See* Slip op. at 4; *see also* 42 Pa.C.S. § 9714(a)(1), *as amended by* Act 2000, Dec. 20, P.L. 811, No. 113, 2; *see also Commonwealth v. Butler*, 563 Pa. 324, 760 A.2d 384 (2000) (presumption of "high risk dangerousness" for second-time offenders under subsection (a)(1) found unconstitutional) (construing prior statute).

**7.** The theft charge merged with the burglary charge for sentencing purposes. *See* N.T., 10/1/02, at 11.

habitual criminal legislation ... is to impose a further penalty upon those hardened and incorrigible criminals who have been unaffected by prior punishment." *Shiffler*, 833 A.2d at 1132 (McEwen, P.J.E., concurring and dissenting) (citing *Commonwealth v. Dickerson*, 404 Pa.Super. 249, 590 A.2d 766, 771 (1991), *aff'd*, 533 Pa. 294, 621 A.2d 990 (1993)). P.J.E. McEwen concluded that because appellant's prior sentence was his "first and only prior contact with the criminal justice system" he would not "so widely cast the net of incorrigibility that will pull appellant into the penitentiary for 25 years...." *Shiffler*, 833 A.2d at 1132.

On appeal to this Court, appellant challenges the panel majority's interpretation of Section 9714, arguing that he is but a two-strike offender. Appellant suggests that we read the statute as a whole and interpret it consistently with the recidivist philosophy of sentencing, which the General Assembly intended. He submits that such a reading reveals that, in order to be sentenced as a third-time offender under the statute, the defendant's two predicate convictions must have occurred "sequentially." [8] Moreover, appellant argues that requiring prior convictions to be sequential "is necessary to serve the statute's aim—to impose a stiffer penalty on the incorrigible criminal who has been unaffected by prior punishments." Appellant's Brief at 13. The Commonwealth counters that the Superior Court was correct in remanding the matter for resentencing based on the plain meaning of the statutory text which dictates that appellant be sentenced as a third-time offender. We granted allocatur to consider whether the recidivist philosophy influences or controls the interpretation of the three strikes law.

**8.** Throughout his argument, appellant repeatedly refers to what he calls the statute's "sequentiality requirement." Essentially, he submits that a defendant may be sentenced as a three-strike offender under 42 Pa.C.S. § 9714(a)(2) **only** where the following criminal chronology preceded his present sentencing: commission of a first crime; conviction for the first crime; service of sentence for the first crime; commission of a second crime; conviction for the second crime; service of sentence for the second crime. *Cf. Dickerson*, 621 A.2d at 992 (suggesting that, in drafting Section 9714, legislature did not consider chronology of criminal record at issue in that case).

As a preliminary matter, we note that this appeal does not involve a challenge to the discretionary aspects of appellant's sentence, over which this Court would lack jurisdiction. *See* 42 Pa.C.S. § 9781(f) ("No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."); *see also Bradley,* 834 A.2d at 1131. Rather, as was the case in *Bradley,* appellant's present claim raises a question of statutory construction, which is a pure question of law and which, under the circumstances, implicates the legality of appellant's sentence. This is so because, in the absence of the twenty-five year mandatory minimum sentence provided for in Section 9714(a)(2), appellant would have been exposed to a maximum sentence of only twenty years of imprisonment for the burglary conviction.[9] *See Bradley,* 834 A.2d at 1131. If the three strikes provision were deemed inapplicable, appellant's sentence would exceed the lawful maximum, and hence, would be deemed illegal. Accordingly, appellant may raise the instant claim as a matter of right, and this Court has jurisdiction to review it. 42 Pa.C.S. § 9781(a) ("The defendant or the Commonwealth may appeal as of right the legality of the sentence."); *see also Bradley,* 834 A.2d at 1131.

Because the present claim raises an issue of statutory construction, this Court's standard of review is plenary. *See Hazleton Area School Dist. v. Zoning Hearing Bd.,* 566 Pa. 180, 778 A.2d 1205, 1210 (2001). Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 391 (2000). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best

9. Appellant pleaded guilty to burglary as a felony of the first degree, which carries a statutory maximum sentence of twenty years of imprisonment. 18 Pa.C.S. § 3502(c)(1); § 1103(1).

indication of legislative intent is the plain language of a statute." *See Bradley,* 834 A.2d at 1132 (citing *Commonwealth v. Gilmour Mfg. Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003)). In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant. *See, e.g., Commonwealth v. Driscoll,* 485 Pa. 99, 401 A.2d 312, 316 (1979).

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

The three strikes law sets forth the mandatory minimum sentences to be imposed upon certain repeat offenders as follows:

**§ 9714. Sentences for second and subsequent offenses.**
**(a) Mandatory sentence.—**

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S. § 9714(a). "Crimes of violence" include only those crimes that are statutorily enumerated in subsection (g), and "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present" is one such crime. 42 Pa.C.S. 9714(g).[10] Section 9714(d) then

10. Notably, the Crimes Code definition of burglary does not mirror that found in Section 9714(g). The Crimes Code defines burglary, in relevant part, as follows: "**A person is guilty of burglary if he enters a building or occupied structure** with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. 3502(a) (emphasis added). An "occupied structure" is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, **whether or not a person is actually present**." 18 Pa.C.S. 3501 (emphasis added). Burglary is a felony of the first degree,

provides for the manner of proving the applicability of the mandatory sentence, including a rather remarkable provision allowing for the vacation of a mandatory sentence if one of the predicate "strikes" is vacated:

Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S. 9714(d).

In the course of the last fifteen years, this Court has examined the question of what satisfies the definition of a predicate crime under the statute—*i.e.,* a previous conviction for a crime of violence—in two notable decisions, which provide helpful context for our consideration here.

In *Dickerson,* this Court was asked to interpret the pre–1995 version of the statute, which defined "previous convictions" for "crimes of violence" as any of a list of enumerated offenses if they had "occurred within seven years of the date of the commission of the instant offense." *Dickerson,* 621 A.2d at 991 (quoting former 42 Pa.C.S. 9714(b)).[11] There, the

unless each of two facts are present: (1) "the building, structure or portion entered is not adapted for overnight accommodation"; **and** (2) "no individual is present at the time of entry," in which case it is reduced to a second degree felony. 18 Pa.C.S. 3502(c). Under Section 3502, therefore, a defendant can properly be convicted for burglary as a first degree felony even where no one was present, and there will not necessarily be a finding as to that fact. Notwithstanding that procedural reality, the three strikes law classifies "burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present" as a "crime of violence." As a result, a defendant potentially is exposed to the qualification of a present and/or predicate first degree felony burglary as a "crime of violence" even though the factfinder did not necessarily find that a person was present at the time of the offense. Appellant here does not challenge the characterization of his present or prior burglaries as qualifying "crimes of violence;" thus, no issue is presented concerning the disconnect in the definitions.

**11.** The present version of Section 9714 does not limit qualifying predicate crimes of violence to those occurring within a seven-year window.

defendant raped two women, at 9:45 p.m. and 11:00 p.m. respectively, on December 31, 1986. The two attacks resulted in two separate criminal prosecutions. On February 11, 1988, a jury convicted the defendant of, *inter alia,* rape and involuntary deviate sexual intercourse (IDSI) arising from the first attack. On September 13, 1988, the defendant was sentenced for those crimes to serve an aggregate term of imprisonment of seven and one-half to fifteen years.[12] On April 4, 1989, the defendant entered a guilty plea to rape, IDSI, and possessing an instrument of crime, each arising from the second attack. On April 10, 1989, the trial court sentenced the defendant for the second set of crimes to an aggregate term of ten to twenty years of imprisonment. However, following the defendant's motion to modify his sentence, the trial court re-sentenced him to an aggregate term of seven and one half to fifteen years of imprisonment, to run consecutively to his aggregate term for the first set of convictions. In fashioning the sentence, the trial court applied the five-year mandatory minimum sentence set forth in the version of Section 9714(a) which was in force at the time.

On appeal to the Superior Court, the defendant claimed, *inter alia,* that his prior counsel was ineffective for failing to object to the trial court's imposition of a mandatory minimum sentence under Section 9714. The court found arguable merit in Dickerson's claim that Section 9714 did not apply in his case because "a conviction cannot be a previous conviction for purposes of 9714(b) unless the *conviction* for the first offense occurs prior to the *commission* of the second offense." *Dickerson,* 590 A.2d at 770 (emphasis in original). Thus, the court vacated the judgment of sentence and remanded for an evidentiary hearing on counsel ineffectiveness.

See 42 Pa.C.S. § 9714(a),(g), *as amended by* 2000, Dec. 20, P.L. 811, No. 113, § 2.

12. The pre–1995 version of the statute did not distinguish between second- and third-time offenders, but rather, set forth a mandatory minimum prison sentence of five years for *all* repeat offenders. *See* 42 Pa.C.S. § 9714(a), *as amended by* 1995, Oct. 11, P.L. 1058, No. 21 (Spec.Sess. No. 1), § 4.

The Commonwealth appealed to this Court, challenging the Superior Court's interpretation of the statute. We affirmed, explaining our reading of the statute, which was consistent with the defendant's position, as follows:

> We understand the ... language to mean "within seven years *prior to* the date of the commission of the instant offense." The Commonwealth argues that it means "within seven years *before or after* the date of the commission of the instant offense." The dispute arises because the legislature apparently did not consider the anomaly posed by appellee's criminal behavior. In cases of recidivism, we expect the following sequence of events: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing. In such a situation, the legislature provided that the mandatory minimum sentence would be imposed at the second sentencing if the first conviction occurred within seven years before the second offense. If the first conviction occurred more than seven years before the second offense, the legislature did not consider the criminal sufficiently blameworthy to merit the enhanced minimum sentence. The sequence of events in this case, however, was: first offense, second offense, first conviction, first sentencing, second conviction, second sentencing. We hold that, in this sequence, the mandatory minimum sentencing statute does not apply because the first conviction did not occur within seven years prior to the commission of the second offense.

*Dickerson,* 621 A.2d at 992 (emphases in original). As support for its conclusion, this Court quoted the Superior Court's reasoning that:

> It was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone, except the incorrigible one, who after being reproved, "still hardeneth his neck." If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.

*Id.* (quoting *Dickerson,* 590 A.2d at 771). Furthermore, the Court commented that, "[t]he point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretical effects of penal discipline." *Id.,* 621 A.2d at 992.

This Court had further occasion to review the current version of the statute in *Bradley.* There, the defendant was convicted of, *inter alia,* aggravated assault in 1997. At his sentencing hearing, the Commonwealth presented evidence of the defendant's two prior convictions for armed robbery in 1991. Specifically, on February 7, 1991, the defendant and two co-defendants robbed a man outside of a restaurant in Harrisburg at around 8:13 p.m. The three men then drove approximately 3 miles and robbed a second victim outside of a different restaurant at around 8:41 p.m. The defendant was eventually convicted of both offenses, but received only a "single term of imprisonment." *Id.* at 1134. The trial court concluded that the two prior robberies constituted two separate predicate crimes of violence and sentenced the defendant, as a third-time offender, to a mandatory minimum term of twenty-five years of imprisonment. The Superior Court affirmed. On appeal to this Court, the defendant argued that the 1991 robberies arose from a "single criminal transaction," rather than "separate criminal transactions" as required by the three strikes law.

This Court conducted a statutory interpretation analysis focusing on the meaning of the word "transaction." We found that the word had acquired a "peculiar and appropriate" meaning in the sentencing context and examined its usage in various sections of the Sentencing Guidelines, as well as the usage of the phrase "criminal episode" in the compulsory joinder rule set forth in Section 110 of the Crimes Code. *Id.* at 1133–34 (citing 18 Pa.C.S. 110). Ultimately, we rejected the defendant's argument that his 1991 armed robberies were not separate criminal transactions and explained as follows:

> Looking at the temporal and logical relationship between the two 1991 robbery convictions, ... two separate criminal transactions were involved. The crimes were not committed

"at a single time." Nor did the crimes constitute "temporally continuous actions that are part of the same episode, event or incident." Rather, the robberies were discrete criminal incidents occurring at different times and in different locations over three miles apart and involving two victims with no connection to one another. Neither robbery was essential to the successful commission of the other.

Nor does the mere fact that appellant and his confederates committed the same type of crime upon the two victims render them " '[s]pree' crimes ... [that] occurred as continuous actions not separated in time by law abiding behavior." Appellant did not, for example, rob the first victim outside of the [first restaurant] and then immediately rob a second victim at the same location. Instead, appellant and his accomplices completed the first robbery, split the proceeds and left the scene of this crime. The trio then drove to a different location three miles away. In another apparent crime of opportunity, the three then robbed their second victim outside a [second restaurant]. Although the offenses were committed in relatively short proximity to one another, they were not part of a single, continuous train of criminal events with no break in criminal activity. Accordingly, we hold that the courts below properly deemed them to be "separate criminal transactions" for purposes of the three strikes provision.

*Id.* at 1134.

In addition to challenging the meaning of the term "transaction," the defendant in *Bradley* also attempted to raise some form of the recidivist philosophy argument raised by appellant herein, since he had been subject to a single sentencing for the prior crimes. However, the *Bradley* Court noted that the defendant had not raised that specific argument at the time of his sentencing, in his post-sentence motions, or in his Pa. R.A.P.1925(b) statement. Thus, the argument was waived. What was waived in *Bradley* is now squarely joined in the case *sub judice.*

We begin by acknowledging that the narrow text at issue here—*i.e.*, the language in Section 9714(a)(2) which subjects to

mandatory minimum sentences those defendants who "at the time of the commission of" their current offense had been "previously convicted" of two or more crimes of violence— seems to apply to appellant's circumstances. There is no dispute that, at the time appellant committed the current burglary offense on December 26, 2001, he had been previously "convicted" of not two, but three, qualifying crimes of violence—*i.e.*, the 1997 trio of burglaries.[13] Furthermore, none of the triggering terms—specifically, "commission," "previous," or "conviction"—have acquired a peculiar and appropriate meaning in the sentencing context, but rather, have been interpreted only according to their common and approved usage. *See Bradley*, 834 A.2d at 1127; *Dickerson*, 621 A.2d at 992.

■ However, appellant's statutory ambiguity argument looks beyond the language of subsection (a)(2) to a consideration of the operation of the statute as a whole. Appellant argues that subsection (a)(2), which specifically addresses third-time offenders, is ambiguous precisely because it is silent as to whether convictions for predicate crimes of violence must occur in sequence. He suggests that our holding in *Dickerson*, which recognized that requirement for second-time offender status, logically requires the same sort of "sequentiality" interpretation here. Moreover, appellant generally charges that it would be absurd to construe the statute as intending that he be treated as a third-time offender because, as a matter of fact, he has never been sentenced as a second-time offender under subsection (a)(1). For the following reasons we agree with appellant.

■ First, this Court is mindful of the requirement to construe penal statutes narrowly and that we are to assume

13. Our reading of the plain text is not controlled by our decision in *Bradley*, where we found ambiguity in the word "transaction" as it appears in Section 9714. The sole question in that case was under what circumstances to consider multiple crimes part of the same "transaction" for purposes of the penalty enhancers. *See Bradley*, 834 A.2d at 1134. Here, appellant challenges a fundamentally distinct aspect of the statute and does not argue that his previous three crimes of violence arose from the same criminal transaction.

that the General Assembly does not intend an absurd result to flow from the construction of any statute. Appellant's argument highlights the potential for absurdity or unreasonableness here. At the time of his concurrent sentencing for his three prior burglaries in 1997, appellant was not, in fact, sentenced as a second-time offender. Indeed, because he committed all of the prior burglaries before he was convicted or sentenced for any of them, he **could not have been** sentenced as a second-time offender in light of our holding in *Dickerson*, 621 A.2d at 992 (previous conviction must occur **prior** to commission of subsequent offense). The anomaly of appellant's situation is thus: while he has not ever been—nor **could** he have been—sentenced as a second-strike offender, a reflexive application of subsection 9714(a)(2) would subject him to sentencing as a third-strike offender. The unreasonableness of that result is made more apparent when considering the disparity between the sentence appellant received upon his first sentencing contact with the criminal justice system—an aggregate term of 11½ to 23 months of imprisonment in a county facility—and that which the Superior Court panel majority deemed statutorily required upon this, his second sentencing contact with the system—a minimum term of 25 years of imprisonment. We do not believe that such a result was intended by the General Assembly in adopting the graduated scheme of recidivist sentencing which is reflected in Section 9714.

Our construction of the statute as intending a sequential approach is supported by the learned Concurring Opinion of Mr. Justice Saylor in *Bradley*, 834 A.2d at 1136 (Saylor, J., concurring). The Concurring Opinion recognized that Bradley's "presentation" on appeal limited the analysis available to the Majority Opinion, which was authored by this Justice. The Concurring Opinion cautioned against simply dismissing, in appropriate future cases, arguments in favor of a broader understanding of the statute, which were not raised by Bradley, including, *inter alia:* the potential relevance of the recidivist philosophy and the rule of lenity. *Id.* at 1136–37 (Saylor, J. concurring). Both considerations have salient value here.

As to the recidivist philosophy, this and other Pennsylvania appellate courts have repeatedly recognized that, "[t]he point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity **despite the theoretically beneficial effects of penal discipline**," *Dickerson,* 621 A.2d at 992 (emphasis added) (collecting cases). Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter. Any other conception would ignore the rationale underlying the recidivist philosophy, *i.e.,* that the most culpable defendant is "one, who after being reproved, 'still hardeneth his neck.'" *Id.* Just as the second-time offender enhancement under subsection (a)(1) is meant to punish a defendant more severely when that defendant has offended before and has been afforded an opportunity to reform, so too is the third-time offender enhancement under subsection (a)(2), which increases the minimum punishment to twenty-five years, obviously meant to punish a defendant more severely when he has already foregone **two** opportunities to reform himself. The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law. As appellant notes:

> The prevalent view is that enhanced punishment cannot be imposed unless all of the defendant's prior convictions preceded commission of the principal offense, and each prior offense and conviction occurred in chronological sequence. Thus, each offense, following the first, must have been committed after the defendant's conviction of the immediately preceding offense. Courts adopting this view have reasoned that habitual offender statutes are intended to warn the potential career criminal of the consequences of persistent criminal activity, and to give the offender an opportunity to reform through exposure to the restraining influences of conviction and punishment before the more severe punishment of an habitual offender statute is im-

posed. **The offender is deemed incorrigible not so much because he or she has sinned more than once, but because the offender has demonstrated, through persistent criminal behavior, that he or she is not susceptible to the reforming influence of the conviction process.**

Appellant's Brief at 30 (citing Chronological or procedural sequence of former convictions as affecting enhancement of penalty under habitual offender statutes, 7 A.L.R.5th 263 (1992), 2a) (emphasis added). We see nothing in the carefully graduated structure of Section 9714 to suggest that the General Assembly intended to require a sentencing court to simply skip a defendant's second strike and proceed to "call him out" by applying three strikes.

Our holding today is consistent with the rule of lenity noted by Justice Saylor in *Bradley*. A construction of the statute that would treat appellant as a third-time offender under subsection (a)(2) would be particularly harsh in light of his single previous sentencing and single opportunity for reform. In light of our agreement with appellant that subsection (a)(2) is ambiguously silent regarding whether predicate convictions must be sequential, we are obliged to construe that ambiguity in appellant's favor and find him subject only to second-offender enhancement. *See Driscoll*, 401 A.2d at 316 (citing 1 Pa.C.S.1928(b)).

Further support for our interpretation of Section 9714 may be found in the General Assembly's 2000 amendment to Section 9714. The General Assembly there deleted former subsection (b) in its entirety. In so doing, the legislature deleted the following qualification of the phrase "previous conviction":

**For purposes of this section previous conviction shall include any conviction, whether or not judgment of sentence has been imposed** or litigation is pending concerning that conviction.

42 Pa.C.S. § 9714(b)(2), *as amended by* 1986, Dec. 11, P.L. 1521, No. 165, § 9 (emphasis added). The deleted language, which expressly made enhanced sentencing non-contingent upon prior **sentencing**—*i.e.,* prior opportunities for reform—is

evidence that the General Assembly had previously intended a different understanding of this statute than is directed by the existing language and by our decision and holding today.

One final aspect of the statute also supports our holding. Section 9714(d) is extraordinary to the extent that it authorizes an offender to petition the sentencing court for reconsideration of his mandatory sentence if, after sentencing, one of his previous convictions (*i.e.*, strikes) has since been vacated and the present mandatory sentence depended upon that conviction. 42 Pa.C.S. § 9714. This provision clearly reflects a recidivist philosophy approach. Indeed, that an offender may be vindicated by the very court that sentenced him—apparently unrestricted by any time bar or other procedural bar—is further proof that the General Assembly did not intend this statute to operate in an unduly harsh manner. To the contrary, the vacation clause indicates the General Assembly's intent to be realistic in its assessment of the status of the violent-crime offender, ensuring that his enhanced punishment is consistent with his actual level of repeat culpability.

Finally, this Court is mindful of the admonition, offered by this very author, that:

> The recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate: "the legislature is therefore free to reject or replace it when enacting recidivist sentencing legislation. If the legislature enacts a statute which clearly expresses a different application, the 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language."

*Bradley*, 834 A.2d at 1135 (quoting *Commonwealth v. Williams*, 539 Pa. 249, 652 A.2d 283, 285 (1994)). However, upon close examination of the structure, history, and operation of Pennsylvania's three-strikes law, we are confident that the underlying legislative purpose of this graduated statute is to punish multiple offenders consistently with the recidivist philosophy.

Accordingly, we reverse the order of the Superior Court and remand this matter to the trial court for sentencing consistent with Section 9714(a)(1). Jurisdiction relinquished.

Justice EAKIN did not participate in the consideration or decision of this case.

Justice NEWMAN files a dissenting opinion.

Justice NEWMAN, dissenting.

I respectfully dissent from the Opinion of the Majority. I find myself constrained by the clear and unambiguous language of 42 Pa.C.S. § 9714. Central to the issue is the language chosen by the legislature in enacting Section 9714. The plain language of Section 9714, in which the legislature chose not to include language consistent with a recidivist philosophy, binds me. Although it may be wise for the legislature to revisit the topic, it is not the place of this Court to interject our philosophy into a statute where it in no way violates the Pennsylvania Constitution or conflicts with other laws of this Commonwealth.

The Majority quotes this Court's Opinion in *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003), which reads:
The recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate: "the legislature is therefore free to reject or replace it when enacting recidivist sentencing legislation. If the legislature enacts a statute which clearly expresses a different application, the 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language."

*Id.* at 1135 (quoting *Commonwealth v. Williams*, 539 Pa. 249, 652 A.2d 283, 285 (1994)). However, despite acknowledging this basic tenet concerning the power of the legislature, the Majority goes on to impose a recidivist philosophy where none is evident in the legislature's writing. As discussed *infra*, even when read beyond the plain language of the statute, the clause in question may further a recidivist goal, or be a proper mixture of both recidivist and punitive philosophies.

The exact language at issue provides, "[w]here the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement[.]" 42 Pa.C.S. § 9714(a)(2). As noted by the Majority, this language is clear and, "[t]here is no dispute that, at the time [A]ppellant committed the current burglary offense on December 26, 2001, he had been previously 'convicted' of not two, but three, qualifying crimes of violence." Majority Op. at 13.[1] In addition, the Majority notes that "none of the triggering terms—specifically, 'commission,' 'previous,' or 'conviction'—have acquired a peculiar and appropriate meaning in the sentencing context, but rather, have been interpreted only according to their common and approved usage. *See Bradley*, 834 A.2d at 1127; *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990, 992 (1993)." *Id.* (citations modified). Because there is no question that, at the time of the commission of the current offense, Appellant had three prior convictions, I conclude that, as mandated by the plain language of the statute, the trial court should have imposed the mandatory sentence.

Despite recognizing the clear language of Section 9714(a)(2), the Majority attempts to look beyond the plain meaning of the statute in interpreting the common and approved usage of the terms "previous" and "convictions." In support of this argument, Appellant cites *Dickerson, supra,* in which this Court interpreted another part of the statute to contain a requirement that the convictions and sentencing be sequential. Although this Court set forth the normal sequence of events, namely, first offense, first conviction, first sentencing, second offense, second conviction, second sentencing, we did not

1. There may be some dispute over whether the two crimes committed on February 2, 1997, within one and one-half hours of each other would count as two separate convictions. However, *Bradley,* would lead one to believe that these two crimes would count as separate transactions, making this Appellant's fourth strike. Moreover, even if we were to consider the two February crimes to be one previous transaction, the 1996 criminal event is clearly separate and Appellant would be on his third strike.

address the present scenario. Instead, *Dickerson* may be differentiated on the basis that the second **offense** occurred prior to the first conviction. Read within the plain language of Section 9714, at the time of the commission of the second offense, Dickerson had not been convicted for a prior offense. In that case, Dickerson had committed a second rape on the same day as the first rape. Accordingly, this Court stated that "a conviction cannot be a previous conviction for purposes of [Section] 9714(b) unless the **conviction** for the first offense occurs prior to the **commission** of the second offense." *Dickerson*, 590 A.2d at 770 (emphasis in original). Thus, clearly, Dickerson could not be sentenced as a second-strike offender pursuant to the plain language of the statute, and not because the Court imposed either an additional requirement that the convictions and sentences be sequential or a recidivist philosophy.

It is certainly the most likely scenario that a chain of events would unfold as: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing, third offense, third conviction, third sentencing. Nevertheless, the legislature could surely foresee other situations, such as this one.

Appellant and the Majority attempt to stretch the dicta in *Dickerson*, which discusses the general philosophy behind a three-strikes statute, to destroy the literal meaning of the words within subsection (a)(2). However, Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921, binds us to the words of the statute. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* The holding adopted by the Majority contravenes the plain language of Section 9417(a)(2). However, if the Majority incorrectly speculated as to the intent of the legislature, and the legislature did in fact desire, as the language of the statute indicates, for the current circumstances to trigger the three-strikes mandatory minimum sentence, the legislature would need to insert unnecessary and repetitive language into the statute; whereas, the current language is a paragon of clarity.

My position allows the legislature to modify the statute to reflect its true intent, if, as the Majority avers, the plain language does not currently do so.

Moreover, even when considering a recidivist philosophy, it is far from certain that Appellant had not received his two warnings and chances at reform consistent with general recidivist three-strikes policy. Appellant was sentenced for three criminal offenses in one previous proceeding. Appellant received a relatively lenient sentence at that time because the sentences imposed were concurrent. It is more than conceivable that such a situation, in the minds of the legislature, does not deserve to lessen the count of prior convictions for a future offense. The Majority notes that Appellant has not foregone two opportunities to reform himself. Majority Op. at 16. In part, the Majority reasons that the concurrent nature of the prior sentences resulted in a single opportunity for reform. However, unanswered by the position set forth by the Majority is the question that must be answered. If Appellant had been sentenced consecutively, it is asked if a single stretch in prison counts as two opportunities to reform. I believe that the distinction between the two is irrelevant because in both scenarios Appellant has received multiple warnings and opportunities to reform. Presently, the concurrent nature of the sentences for multiple offenses was a benefit and kindness bestowed upon Appellant that he could not have expected. As such, it is illogical to allow the concurrent nature of his convictions to override the plain language of the statute.

Further, the statute is not one that is solely recidivist in nature. Rather, one may interpret the three-strikes law to be partially punitive in nature and thus, to act as a deterrent. Such deterrence is only effective when the punishment for future convictions is clear. Presently, Appellant had reason to know that a conviction subsequent to his prior three would expose him to the three-strikes law mandatory minimum sentence. Moreover, it is possible to interpret the statute as purely punitive in nature, creating a harsher penalty not in the

interests of rehabilitation of the offender, but because of a defendant's repeated commissions of criminal acts.[2]

A dispute over the proper policy to be adopted by the Commonwealth should be left to the legislature and not to this Court. Although recidivist in nature, the language is clear, and the other sections cited by the Majority do not persuade me to override that language as clearly contrary to the purpose of the statute.

I am bound by the clear language of Section 9714 and conclude that because Appellant "had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions," 42 Pa.C.S. § 9714(a)(2), the Superior Court properly held that Appellant should be sentenced to a twenty-five year mandatory minimum sentence.

---

**2.** A secondary problem with the case *sub judice* is that the penalty is facially harsh. A twenty-five year mandatory minimum for a seemingly minor offense of burglary of $76.00 and a brassiere is extreme. However, no challenge is before us concerning the constitutionality of the punishment. *See Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (holding, in a five to four decision, that a twenty-five year minimum sentence for stealing three golf clubs pursuant to California's three-strikes law did not violate the Eighth Amendment, and that any criticism for the statute is properly directed at the legislature) (citing *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which a life sentence was given for a three-time felon where the underlying offense was obtaining $120.75 by false pretenses). However, there is precedent for finding an Eighth Amendment violation for an unduly harsh penalty imposed pursuant to a three-strikes law. *See Crosby v. State*, 824 A.2d 894 (Del.2003) (holding that an effective life sentence of forty-five years for second-degree forgery was excessive and that a life sentence was cruel and unusual in violation of the Eighth Amendment). *See also Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that it was a violation of the Eighth Amendment to sentence a defendant to life for a seventh non-violent felony of writing a bad check for $100.00).