J-S38042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY DANIEL JONES | : | |
| | : | |
| Appellant | : | No. 374 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 6, 2025
In the Court of Common Pleas of Lehigh County
Criminal Division at CP-39-CR-0000271-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY DANIEL JONES | : | |
| | : | |
| Appellant | : | No. 487 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 6, 2025
In the Court of Common Pleas of Lehigh County
Criminal Division at CP-39-CR-0000272-2021

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 21, 2026**

In these consolidated appeals, Appellant Zachary Daniel Jones appeals from the judgments of sentence imposed after the trial court revoked his probation and sentenced him to serve an aggregate 18 to 36 months of incarceration. We vacate and remand for **further proceedings**.

On May 26, 2021, Appellant accepted a negotiated plea bargain to resolve two criminal cases he was then facing, both of which alleged that

Appellant sold or intended to sell methamphetamine. Appellant pleaded guilty to a total of three felony drug offenses, and on September 14, 2021, the trial court ordered Appellant to serve 11½ to 23 months of incarceration, followed by a consecutive one-year period of probation. Appellant was immediately paroled and ordered to comply with a drug treatment program.

In February of 2022, a probation officer requested that the court issue a bench warrant for Appellant, asserting several parole violations, including the filing of new criminal charges, failing to remain drug free, and failing to undergo required drug screenings. Following dismissal of the new charges, the trial court revoked Appellant's parole on June 6, 2022, and remanded him to the county jail. Appellant was paroled the next day. In October of 2022 probation officers again requested a warrant for parole violations, including the allegation that Appellant failed to remain drug free. That request was amended to reflect new charges for, *inter alia*, possession of drugs. After a hearing, the trial court again revoked parole and committed Appellant to serve the balance of his sentence.

Appellant was released on July 3, 2024, and began serving his one-year period of probation. A probation violation petition was filed on September 6, 2024, "due to technical violations." Trial Court Opinion (TCO), 4/8/25, at 3. Appellant waived his right to a **Gagnon I** hearing, and the trial court held a

***Gagnon II*** hearing on January 6, 2025.[1]  At that hearing, the trial court summarized the allegations and Appellant's history of noncompliance.

> It's alleged that he violated condition one, failed to comply with all verbal and written instructions, condition five, failed to remain drug free, condition six, failed to undergo drug screening.
>
> It appears since being released from jail on July 3rd, 2024, he has been using methamphetamine on a weekly basis, testing positive for the same.  The possession with intent to deliver charge, as you heard, involved methamphetamine.
>
> He had been directed to enroll in inpatient treatment prior to his incarceration.  He underwent a drug and alcohol evaluation, which only recommended [out-patient treatment].  He was put on zero tolerance, continued to use methamphetamine.

N.T., 1/6/25, at 5-6.

Appellant conceded that he committed these violations, and the trial court revoked his probation.  Appellant opted to immediately proceed to sentencing, and the trial court imposed a new sentence of 18 to 36 months of incarceration, and deemed him eligible for the State drug treatment program. ***See*** 61 Pa.C.S. §§ 4104-4108.

_____

[1]  The two hearings follow from the United States Supreme Court's decision in ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a *pre-revocation* hearing, a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has been committed.  Where a finding of probable cause is made, a second, more comprehensive hearing, a ***Gagnon II*** hearing, is required before a final revocation decision can be made.

***Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa. Super. 2000) (citations omitted).

Appellant filed a timely post-sentence motion seeking reconsideration, arguing, among other grounds, that 2024 amendments to the statute ("Act 44") governing modification or revocation of probation, 42 Pa.C.S. § 9771, authorized a maximum period of fourteen days of incarceration for his first "technical violation" of probation.  Post-Sentence Motion, 1/16/25, at ¶ 7(g). The trial court denied the motion, and Appellant filed timely notices of appeal at each docket, followed by court-ordered concise statements pursuant to Pa.R.A.P. 1925(b).  On March 14, 2025, this Court consolidated the appeals *sua sponte*.  **See** Order, 3/14/25.  Appellant presents two questions for review:

> 1. Did the [trial c]ourt unlawfully sentence Appellant for technical probation violations to a period of total confinement of not less than 18 months nor more than 36 months in that the sentence exceeds the allowed sentences set forth in 42 Pa.C.S. § 9771(c)(2)?
>
> 2. Did the [trial c]ourt impose an aggravated range sentence that is in excess of the original sentence and an abuse of discretion without providing sufficient reasons therefor, concentrating on the Appellant's drug addiction without considering current mitigating factors?

Appellant's Brief at 4.

Both of Appellant's claims challenge his sentence.  The first claim is presented in terms of legality of sentencing, while the second challenges the discretionary aspects of his sentence.  For the reasons that follow, we conclude

that the maximum sentence the trial court could legally impose was fourteen days.[2]

We first must decide whether the first claim involves the illegality of Appellant's sentence. The Commonwealth maintains that the only legality of sentence challenge available on review is whether the sentence exceeded the statutory maximum. *See* Commonwealth's Brief at 9. Regarding Appellant's claim that the trial court was limited to imposing a maximum period of 14 days of incarceration, the Commonwealth argued that such claims implicate the discretionary aspects of sentencing and submits that the trial court did not abuse its discretion, especially in light of Appellant's demonstrated history of violating the conditions of parole and probation. *Id.* at 12-13.

Appellant argues that his sentence is illegal for the following reasons:

> According to the plain meaning of the statute, Appellant's violation is his first, and the sentence imposed violates 42 Pa.C.S. § 9771(c)(2)(i). The record discloses no prior probation violations, technical or otherwise, therefore, this violation is the Appellant's first violation. As a result, the lawful period of confinement is no more than 14 days. § 9771(c)(2)(1).

Appellant's Brief at 19.

The trial court rejected this claim, emphasizing that Appellant "has repeatedly violated the conditions of his parole and now his probation. He has continued to use methamphetamine, failed to complete drug treatment, and has committed new criminal offenses in multiple counties during his supervision." TCO at 3. The trial court asserts that "technical violations can

_____

[2] We therefore need not address the second issue.

support revocation and a sentence of incarceration when such violations are flagrant and indicate a resistance to reform." *Id.* at 6.

> Throughout [A]ppellant's travails during the course of these charges, his violations were "flagrant," and he has demonstrated a "resistance to reform." His conduct, with multiple violations within a few months after either his transfer to drug treatment or release from prison, supports this conclusion. Appellant has always been more interested in using drugs then addressing his addiction.

*Id.* at 6-7.

The trial court further notes that its order recommended the state drug treatment program as "another opportunity for [Appellant] to address his addiction." *Id.* at 7.

Addressing Appellant's argument that the Act 44 amendments limited confinement for a first technical probation violation to 14 days imprisonment, the trial court concluded that those provisions of the statute are inapplicable based on other statutory language, to wit:

> In pertinent part, a sentence of total confinement may be imposed for a technical violation which involved an "intentional and unexcused failure to adhere to recommended programing or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means...."

> The period of total confinement for a "third or subsequent technical violation" may include any of the sentencing alternatives available at the time of initial sentencing.

*Id.* (citations omitted). The trial court concluded that the "aforementioned history demonstrates that the current violation was a 'third or subsequent violation.'" *Id.*

Following submission of briefs, an *en banc* panel of this Court issued ***Commonwealth v. Seals***, ___ A.3d ___, 2026 WL 739101 (Pa. Super. filed Feb. 19, 2026) (*en banc*), which explained the history of the pre-Act 44 amendments. "Prior to Act 44, section 9771(b) allowed the trial court, upon revocation, to choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration." ***Id.*** at *5 (quotation marks and citation omitted). That authority "was implicitly limited by 9771(c), which prohibited a trial court from imposing a resentence of total confinement" unless the trial court found one of three conditions applied: that "the defendant was convicted of another crime, his conduct indicated he would likely commit another crime unless confined, or total confinement was 'essential to vindicate the authority of the court.'" ***Id.***

Act 44 limited a trial court's authority in two ways. First, the General Assembly "ma[de] subsection (c)'s limitation upon the court's sentencing authority express by adding" language making clear that the authority to resentence was expressly limited by other sections of the statute. ***Id.*** at *6. Second, Act 44 "substantially limited the court's resentencing authority under subsection (c), which differs significantly from the prior version[.]" ***Id.*** at *15.

Those limitations and this Court's post-***Seals*** decision of ***Commonwealth v. Goodwin***, ___ A.3d ___, 2026 WL 775409 (Pa. Super. filed March 19, 2026), require that we vacate and remand for resentencing. First, we must address whether the trial court had authority to impose a period of total confinement at all for "technical violations" of probation. Second, if the

trial court has found the statutory conditions for lifting the statutory presumption against total confinement, we then decide whether the concomitant sentence complies with the penalty scheme established by Act 44.

We begin with the relevant limitations on the court's authority to order total confinement based on technical violations:

> **(b) Revocation.**--The court may increase the conditions, impose a brief sanction under section 9771.1 (relating to court-imposed sanctions for violating probation) or revoke an order of probation upon proof of the violation of specified conditions of the probation. Subject to the limitations of subsections (b.1) and (c), upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.
>
> . . . .
>
> **(c) Limitation on sentence of total confinement.**--There is a presumption against total confinement for technical violations of probation. The following shall apply:
>
> > (1) The court may impose a sentence of total confinement upon revocation only if:
> >
> > . . . .
> >
> > > (iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
> > >
> > > . . . .
> > >
> > > > (F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the

> defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.

42 Pa.C.S. § 9771.

The trial court determined that Section 9771(c)(1)(iii)(F) warranted total confinement. The **Seals** Court held that the trial court's authority to impose a period of total confinement "is preconditioned on the finding of a triggering fact," and that the "legality of sentence claim includes our *de novo* review of whether the requisite fact exists.'" **Seals**, 2026 WL 739101 at *14 (quotation marks and citation omitted). Specifically, "[t]otal confinement is an option for a resentence 'only if' subsections (i), (ii), or (iii) of section 9771(c)(1) are satisfied." **Id.**

Accordingly, the first question presented implicates the legality of Appellant's sentence and requires a *de novo* review of whether the requisite triggering facts under Section 9771(c)(1)(iii)(F) exist. Here, the pertinent facts are whether (1) Appellant's violations "involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions" where those violations did not "stem[] from the same episode of events" and (2) that Appellant "cannot be safely diverted from total confinement through less restrictive means."

There is no doubt that the record supports both findings. First, Appellant committed intentional and unexcused failures to adhere to recommended

conditions on three or more occasions, and those occasions did not "stem[] from the same episode of events[.]" Appellant's underlying crimes involve drugs and drug use, and he conceded the allegations made at his **Gagnon II** hearing. The probation officer stated that Appellant "was consistently using methamphetamine on a weekly basis" following the expiration of his parole revocation sentence, and the officer "strongly encourage[d], if not direct[ed] [Appellant] to get into inpatient treatment[.]" N.T., 1/6/25, at 7. At every subsequent meeting, "there was new [drug] use." **Id.** Appellant therefore tested positive for methamphetamine on at least three separate occasions that were not part of the same episode of events.[3] The first finding is thus established by the record.

Next, we conclude that the trial court properly determined that Appellant's conduct supported its finding that Appellant could not "be safely diverted from total confinement through less restrictive means." In **Goodwin,** we held that the evidence "established Goodwin committed flagrant probation violations supporting probation revocation and imprisonment." **Goodwin**, 2026 WL 775409 at *4. Similarly, we conclude in the instant case that the trial court did not err in finding, by a preponderance of the evidence, that

_____

[3] We decline to perform a full statutory analysis of the phrase "same episode of events" as we find it is clear that drug tests performed on different days constitute separate "episodes." **Cf. Commonwealth v. Hude**, 458 A.2d 177, 183 (Pa. 1983) ("The interpretation of the term 'single criminal episode' must not be approached from a hypertechnical and rigid perspective which defeats the purposes for which it was created.").

Appellant's multiple and flagrant probation violations warranted lifting the statutory presumption against total confinement. *See* TCO at 6-7.[4]

The remaining question is whether the trial court's sentence exceeded the maximum period of confinement authorized by the statute. The relevant statutory text reads:

> (2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant shall be sentenced as follows:
>
>> (i) For a first technical violation, a maximum period of 14 days.
>>
>> (ii) For a second technical violation, a maximum period of 30 days.
>>
>> (iii) For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing.

42 Pa.C.S. § 9771(c)(2)(i-iii).

The trial court applied subparagraph (iii), citing Appellant's "history" as demonstrating "that the current violation was a 'third or subsequent violation.'" TCO at 7. We disagree and conclude that this was Appellant's first technical violation.

_____

[4] We note that Appellant does not specifically challenge the trial court's findings in this regard. *Compare Goodwin*, 2026 WL 775409 at *2 (Goodwin argued that "none of the enumerated conditions" supporting confinement had been met). While the existence of the triggering fact falls under our *de novo* review, the basis for Appellant's argument is to the length of his sentence, not the fact of his confinement.

- 11 -

In **Goodwin**, **supra**, the trial court revoked Goodwin's probation and sentenced him under (c)(2)(iii), reasoning that Goodwin had committed at least three technical violations. We addressed the same issue presented here, *i.e.*, whether a trial court may "skip" (c)(1)(i-ii) and proceed directly to (c)(1)(iii) based on multiple technical violations even if those violations did not previously result in a formal judicial finding that the probationer was a technical violator. We concluded that the statute unambiguously sets forth a "recidivist philosophy" whereby offenders must be given a chance to reform their conduct.

> Multiple statutes that became effective on the same day as Section 9771 manifest the Legislature's intent to limit the conditions under which Pennsylvanians receive terms of incarceration for technical probation violations, and to afford probation violators the opportunity to correct their conduct before receiving lengthy jail terms for technical violations.
>
> . . . .
>
> Applying the relevant principles of statutory interpretation, we readily determine Section 9771(c)(2) demonstrates a recidivist philosophy and the intent of the legislature to curtail long terms of imprisonment based on the conclusion that, on balance, terms of imprisonment for technical probation violations cause undue expense without enhancing the protection of the public. Recidivist provisions require a violator be given the opportunity to reform his conduct before receiving a more severe sentence for repeated violations. As the Supreme Court explained in discussing a different recidivist sentencing provision, "the point of sentencing enhancement is to punish more severely offenders who have persevered in criminal activity **despite the theoretical beneficial effects of penal discipline**." **Commonwealth v. Shiffler**, 879 A.2d 185, 195 (Pa. 2005) (citation omitted, original emphasis). As the Court further explained, "[a]ny other conception would ignore the rationale underlying the recidivist philosophy, *i.e.,* that the most culpable defendant is one who,

- 12 -

after being reproved, still hardeneth his neck." *Id*. (citations and internal quotation marks omitted).

*Goodwin*, 2026 WL 775409 at *8.

As in *Goodwin*, Appellant's revocation was his first for purposes of this penalty scheme.[5] *Goodwin* therefore controls and holds that the maximum penalty for the first technical violation is a maximum period of 14 days. 42 Pa.C.S. § 9771(c)(2)(i). The trial court's interpretation would create an "absurd and unintended result" by allowing "in effect ... three separate maximum sentences at the same, first hearing on his multiple, technical probation violations." *Goodwin*, 2026 WL 775409 at *8. *Goodwin* holds that the General Assembly authorized a trial court to "impose any sentencing alternatives available at the time of initial sentencing" under 42 Pa.C.S. § 9771(c)(2)(iii) only after a probationer is afforded "the opportunity to conform his conduct to law after a first (or second) lesser sentence for a technical violation." *Id.* Because this was the first technical violation in terms

_____

[5] To the extent the trial court relied on prior **parole** revocations as counting towards the number of prior **probation** violations, we conclude that the parole revocations are irrelevant. The plain text of Section 9771 speaks only to probation violations, not parole violations. *Cf. Commonwealth v. Koger*, 295 A.3d 699, 708 (Pa. 2023) ("Indeed, while constitutional principles like due process may in some ways offer similar protections to probation and parole revocations, it is, at the end of the day, the General Assembly's prerogative to authorize whatever conditions for probation and parole that it sees fit[.]"). Similarly, the General Assembly is free to authorize whatever punishments it deems fit for parole and probation violators. As Section 9771 does not discuss parole, we will not consider a prior parole violation as a prior probation violation.

of a formal judicial finding[6] deeming Appellant a technical violator, the trial court imposed an illegal sentence.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/21/2026

---

[6] The **Goodwin** Court acknowledged that this result may not end up promoting legislative intent as "the changes create a disincentive for thoughtful probation officers, similar to the probation officer in the instant matter, to exercise their discretion and afford the benefit of the doubt to probationers who commit technical violations." **Goodwin**, 2026 WL 775409 at *8 n.10. The record indicates that the probation officer here likewise tried to give Appellant "the benefit of the doubt" through an "informal out-of-court warning system[.]" **Id.**