¶ 34 A "best interests" analysis is applicable to, and the paramount concern in, any child custody case. *See, e.g., Hogrelius v. Martin*, 950 A.2d 345, 348 (Pa.Super.2008); *N.H.M. v. P.O.T.*, 947 A.2d 1268, 1273 (Pa.Super.2008); *A.J.B. v. M.P.B.*, 945 A.2d 744, 747 (Pa.Super.2008). Accordingly, we decline to address the issue of whether Child's best interests would be served by having Robert play a continuing role in his life, which would be better addressed as part of the subsequent custody phase of this case, if there is one. In its written opinion, the trial court stated that it was "deciding paternity only," and "not whether [Robert] has established *in loco parentis* for purposes of standing to request custodial rights." Trial Court Opinion, 12/5/06, at 4. As Robert's third-party custody rights are not presently at issue in this appeal, the issue of Child's "best interests" is outside of our jurisdiction and we decline to address it.

**In the Interest of C.A., A Minor Child,**

**Appeal of C.A., A Minor.**

Superior Court of Pennsylvania.

Submitted July 21, 2008.
Filed Nov. 3, 2008.

---

MaryJean Glick, Public Defender, for appellant.

Donald R. Totaro, Asst. Dist. Atty., for Com., appellee.

BEFORE: LALLY–GREEN, FREEDBERG, and FITZGERALD *, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, C.A., appeals from the order dated August 28, 2007, committing him to the Pennsylvania Sexual Responsi-

* Former Justice specially assigned to the Superior Court.

bility and Treatment Program at Torrance State Hospital pursuant to 42 Pa.C.S.A. § 6401 *et seq.* ("Act 21"). We affirm.

¶ 2 The procedural history of the case is as follows. On August 16, 2004, C.A. was adjudicated delinquent for indecent assault. On the same date, the juvenile court entered an order of disposition placing Appellant "on probation in the custody of his parents ... under the supervision of the Office of Juvenile Probation." Docket Entry 7. The court further ordered Appellant to "attend and successfully complete any recommendations directed by the Office of Mental Health/Mental Retardation including but not limited to placement in a Residential Treatment Facility." *Id.*

¶ 3 The Lancaster County Office of Mental Health/Mental Retardation ("MH/MR") recommended that Appellant be placed in Adelphoi Village. N.T., 6/11/2007, at 7. He was terminated from that program on November 20, 2004. On January 4, 2005, at MH/MR's recommendation, Appellant began attending Summit Quest Academy. *Id.* at 8. On December 11, 2006, Appellant turned 20 years old. Appellant was enrolled at Summit Quest at that time.[1] In late 2006, Appellant was evaluated for Act 21 purposes. The Sexual Offender Assessment Board determined that Appellant had pedophilia, a "mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." *See* 42 Pa.C.S.A. § 6403(a)(3); N.T., 8/27/07, at 48. On August 27, 2007, the juvenile court held an Act 21 hearing. On the next day, the court found by clear and convincing evidence that Appellant was subject to Act 21. The court committed Appellant to an involuntary residential

1. Appellant remained at Summit Quest until the summer of 2007, when he was committed under Act 21.

treatment facility for one year. This appeal followed.[2]

¶ 4 Appellant raises one issue on appeal:

1. Did the court err in finding that 42 Pa.C.S. § 6403 applied to a juvenile who was adjudicated delinquent, placed on probation by the Juvenile Court, and subsequently entered a treatment facility pursuant to the Mental Health Procedures Act, where he remained at age twenty?

Appellant's Brief at 4.

¶ 5 Appellant raises an issue of statutory construction. *In the Interest of K.A.P.*, 916 A.2d 1152 (Pa.Super.2007) (describing the Act 21 process in detail), *affirmed*, 596 Pa. 351, 943 A.2d 262 (2008). Our Supreme Court recently set forth the relevant principles of statutory construction, and our standard of review, as follows:

[T]his Court's standard of review is plenary. Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, as a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189–190 (2005) (some citations omitted).

¶ 6 Section 6403 sets forth the criteria for court-ordered involuntary commitment as follows:

---

**2.** On September 27, 2007, the juvenile court ordered Appellant to file a concise statement of errors complained of on appeal under Pa. R.A.P.1925. Appellant filed a timely concise statement, raising the issue that he now raises on appeal. The juvenile court issued a Rule 1925 opinion on November 14, 2007.

## § 6403. Court-ordered involuntary treatment

### (a) Persons subject to involuntary treatment.—

A person may be subject to court-ordered commitment for involuntary treatment under this chapter if the person:

1. Has been adjudicated delinquent for an act of sexual violence.

2. Has been committed to an institution or other facility **pursuant to section 6352** (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.

3. Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

42 Pa.C.S.A. § 6403(a) (emphasis added).

¶ 7 In the instant case, Appellant does not dispute the first or third criterion. Appellant also concedes that he was in an institution or other facility on his 20th birthday. Appellant argues, however, that he is not subject to Act 21 because he was not "committed to an institution or other facility pursuant to section 6352." 42 Pa. C.S.A. § 6403(a)(2). Appellant contends that he was placed in Summit Quest pursuant to the Mental Health Procedures Act[3] as part of a recommendation by MH/MR, rather than by a direct order of the juvenile court. Thus, we must determine the plain language of the statute and the facts of the case to determine whether Appel-

lant was "committed to an institution or other facility pursuant to section 6352."

¶ 8 Section 6352(a) authorizes the juvenile court to select from six alternatives in issuing orders of disposition for a delinquent child. The second of these six alternatives is "placing the child on probation under supervision of the probation officer of the court ... under conditions and limitations the court prescribes." 42 Pa. C.S.A. § 6352(a)(2).[4] The juvenile court held that Appellant's commitment to Summit Quest was authorized under § 6352(a)(2) as a condition of probation. Trial Court Opinion, 11/14/2007, at 9. We agree. As noted above, the court placed Appellant "on probation in the custody of his parents ... under the supervision of the Office of Juvenile Probation." Docket Entry 7. The court further ordered Appellant to "attend and successfully complete any recommendations directed by the Office of Mental Health/Mental Retardation including but not limited to placement in a Residential Treatment Facility." *Id.* The record reflects that Appellant was placed in Summit Quest at MH/MR's recommendation as a condition of probation. As such, Appellant was committed to Summit Quest "pursuant to" § 6352, for purposes of Act 21.

¶ 9 Appellant asserts that he attended Summit Quest under the auspices of the Mental Health Procedures Act rather than through a direct order of court under § 6352(a)(3). This distinction is irrelevant. Under the plain language of Act 21, a juvenile can be committed to an institution "pursuant to" § 6352(a)(2), even if he has not been placed there by direct order of

---

3. 50 P.S. § 7201.

4. The other alternatives are: (1) any order authorized for dependent children under § 6351; (3) directly committing the child to an institution, camp or facility authorized by the Department of Public Welfare (DPW); (4) committing the child to a facility operated by the DPW (if the child is over 12 years old); and (5) fines, costs, fees, or restitution as part of a rehabilitation plan; and (6) fines or restitution as a term of probation. 42 Pa.C.S.A. § 6352(a)(1), (3)-(6).

court under § 6352(a)(3). Accordingly, we affirm the trial court's order.[5]

¶ 10 Order affirmed.

5. Because the plain language of the statute is unambiguous, we need not address Appellant's public policy arguments.