**In the Interest of S.R.R.**

C.P. of Berks County, no. 7424-2005.

*Christine M. Sadler, assistant county solicitor,* for County of Berks.
*Joseph A. Guillama,* for defendant.

LASH, *J.,* September 13, 2010—Before this court is the petition of the juvenile, S.R.R., to "rescind" a court order dated April 21, 2010. That order provided that the juvenile is required to undergo an assessment by the State Sexual Offenders Assessment Board pursuant to section 6358 of the Juvenile Act.[1] Section 6358 provides that when a juvenile has been found to be delinquent for an

---

1. 42 Pa.C.S. §6358

act of sexual violence and certain other criteria are present, the juvenile shall be subject to an assessment by the board to determine whether the juvenile is in need of involuntary treatment pursuant to Act 21 of the Juvenile Act.[2] The juvenile contends that the facts in this case are insufficient to establish a basis for the court ordering the assessment. Also before the court is the motion of the County of Berks Juvenile Probation office to quash the juvenile's petition due to untimeliness. Argument was held on August 19, 2010.

The juvenile has an extensive involvement in the juvenile justice system. On or about July 25, 2005, a petition was filed in Juvenile Court alleging that the juvenile had committed aggravated indecent assault, 18 Pa.C.S. §3125(a)(1) and (2), felony 2, two counts of indecent assault, 18 Pa.C.S. §3126(a)(1) and (2), misdemeanor 2, disorderly conduct, under 18 Pa.C.S. §5503(a)(4), misdemeanor 3, two counts of harassment, 18 Pa.C.S. §2709(a)(1) and (3), summary offenses, and purchase, consumption, possession or transportation of liquor or malt or brewed beverages, 18 Pa.C.S. §6308(a), a summary offense. The incidents were alleged to have occurred on July 23, 2005. At that time, the juvenile was less than 18 years of age, being born on February 21, 1990.

A hearing on the petition was held on August 4, 2005. At that time, the court found the juvenile involved in two (2) counts of indecent assault, disorderly conduct, and purchase, consumption, possession and transportation of liquor or malt or brewed beverages. The juvenile was

2. 42 Pa.C.S. §§6401-6409. Chapter 64, enacted pursuant to Act 21 of 2003 (P.L. 97, August 14, 2003, effective February 10, 2004).

adjudicated delinquent on the misdemeanor charges. Disposition was then deferred pending a drug and alcohol evaluation and a sexuality evaluation, and the juvenile was held in detention. At a disposition hearing on August 23, 2005, the juvenile was placed on intensive probation with a sexuality counselor. Among other things, he was committed to the Youth Services Agency ACT program for eight weekends.

On December 19, 2005, the court held a hearing on allegations that the juvenile violated his probation. The violations included failure to attend school, failure to report to the Juvenile Probation office, failure to perform community service, failing to abide by a curfew, testing positive for marijuana, failing to attend a psychiatric evaluation, and failing to attend counseling. Further disposition was deferred and the juvenile was detained. On January 6, 2006, the juvenile was committed to the Drug and Alcohol Rehabilitation Services at Manos.

On August 23, 2006, the court ordered that the juvenile be released from placement at Manos and detained pending his transfer to a new facility. On August 31, 2006, after an additional hearing, disposition was deferred, the juvenile being directed to cooperate with an additional sexuality evaluation. He remained detained pending the results of the evaluation. The disposition hearing was held on September 28, 2006, at which time the court committed the juvenile to the Alternative Rehabilitation Communities, Inc.'s (ARC) special-needs program. On June 18, 2008, the court ordered that the juvenile continue in placement at ARC.

At a hearing on July 10, 2008, the juvenile was released from ARC and placed on probation. Shortly thereafter on August 1, 2008, he left home without permission and

remained missing until September 11, 2008. The Juvenile Probation office filed probation violations, also charging him with failing to attend counseling, testing positive for marijuna, and drinking alcohol. On September 18, 2008, the juvenile admitted the violations. Disposition was deferred, and the juvenile was detained pending his commitment to the Eagleville Rehabilitation Program commencing September 19, 2008.

On or about November 11, 2008, Eagleville requested that the juvenile be removed from the program. The next day, the juvenile left Eagleville without permission and a bench warrant was issued. He was then detained on the same day pending further hearing. At a subsequent hearing held on November 20, 2008, the court stayed the bench warrant and detained the juvenile, pending his placement at the Berks County Priorities Responsibility Enhancement Program (PREP).

On April 27, 2009, the juvenile was released from the PREP program and placed on probation to reside independently in his own apartment. On or about July 1, 2009, additional violations of probation were lodged, alleging failure to report or to maintain contact with the Juvenile Probation office, failing to report for the inpatient drug and alcohol treatment as required, failing to attend counseling, testing positive for marijuana, admitting to the use of alcohol, and admitting to exposing himself on two occasions within the past three months. On July 9, 2009, after hearing held, disposition was deferred. The juvenile was ordered to remain detained and submit to a drug and alcohol evaluation, On July 28, 2009, after further hearing, the juvenile was committed to the Drug and Alcohol Rehabilitation program at Colonial House.

On October 1, 2009, the court ordered the juvenile to remain at Colonial House, pending transfer to a halfway house, to remain in the halfway house until completion of the program, then to reside with his family in the community. Subsequently, the juvenile was transferred to the Alternative Counseling Associates Halfway House. However, on December 14, 2009, the juvenile was arrested for shoplifting. After hearing on December 22, 2009, the juvenile was placed in the shelter care facility at the Youth Detention Center. He remained there until April of 2010, when he was detained in Berks County Prison after being charged as an adult with assault.

On April 21, 2010, on recommendation of the Juvenile Probation office, the court ordered that the juvenile be subject to an assessment by the State Sexual Offenders Assessment Board, pursuant to section 6358. The order was docketed with the clerk of courts of Berks County on April 23, 2010.

On May 24, 2010, the juvenile filed the within petition to rescind the court's order of April 21, 2010. The petition alleges that the court was without basis for ordering an assessment under section 6358. Petitioner points out that section 6358 sets forth that an assessment can only be conducted when a child has been found to be delinquent for an act of sexual violence and is committed to an institution or other facility, defined, and who remains in such facility upon attaining 20 years of age. Here, the juvenile was in placement when he turned 20 however, the placement did not relate to his original commitment. Further, subsequent to his adjudication on the indecent assault and his commitment thereon, the juvenile was released into the community on several occasions and placed on probation. The juvenile also alleges that the

time he spent in shelter care is not considered a facility for purposes of section 6358. Under these circumstances, the juvenile cannot be considered to have "remained" in placement pursuant to his sexual offense.

On or about July 22, 2010, the county filed its motion to quash the juvenile's petition. The county points out that the juvenile's petition was filed on May 24, 2010, which it contends was more than 30 days after entry of the order of April 21, 2010. As such, the court is without authority to modify or rescind the order.

We will initially address the county's motion to quash. As both parties note, the court's authority for modification and rescission of orders is provided in section 5505 of the Judicial Code,[3] which states:

"Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order as been taken or allowed."

Our authority to modify or rescind an order under section 5505 is "almost entirely discretionary." *Stockton v. Stockton,* 698 A.2d 1334, 1337 (Pa. Super. 1997), citing *Justice v. Justice,* 417 Pa. Super. 581, 586, 612 A.2d 1354, 1357 (1992). However, the motion to modify or rescind must be filed within 30 days of the entry of the disputed order. After the expiration of 30 days, the court loses "its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of 'extraordinary cause justifying intervention

3. 42 Pa.C.S. §5505.

by the court.' " *Stockton,* 698 A.2d at 1337, citing *Simpson v. Allstate Insurance Company,* 350 Pa. Super. 239, 504 A.2d 335 (1986); and *Orie v. Stone,* 411 Pa. Super. 481, 601 A.2d 1268 (1992).[4]

We find the county's calculation of the 30-day period to be incorrect. The 30-day appeal period had not expired at the time the juvenile filed the within petition.

As stated in section 5505, the 30 days is commenced upon "entry" of the court's order. While the county correctly points out that the order was executed on April 21, 2010, it was not entered until April 23, 2010, the date that it was docketed with the clerk of courts of Berks County. As stated by the Superior Court in *Halpern v. Halpern,* 926 A.2d 445, 447 (Pa. Super. 2007), an order is not considered entered under section 5505 until it is filed.

In calculating the 30-day period, we rely on section 1908 of the Statutory Construction Act of 1972.[5] Section 1908 states:

"When any period of time is referred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday

---

4. The provision of section 5505 applies to final orders. *Commonwealth v. Fralic,* 425 Pa. Super. 581, 585, 625 A.2d 1249, 1251 (1993). The juvenile asserts that the order of April 21, 2010 is not a final order but is interlocutory and therefor subject to modification. Howerver, we do not address this issue based on our disposition on other grounds.

5. 1 Pa.C.S. §1908.

by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."

The proper calculation is, therefore, to exclude the first day, April 23, 2010, and include the last day, which would be May 23, 2010. However, May 23, 2010 was a Sunday. Under section 1908 whenever the last day of the period falls on a Sunday, that day is omitted from the computation. Thus, the 30th day becomes May 24, 2010, which was also the date in which the within petition was filed. The county's motion to quash the petition is therefore denied.

We turn then to the juvenile's contention that he should not be required to submit to an assessment by the board under section 6358. Section 6358(a) provides:

"*(a) General rule.*—A child who has been found to be delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. §§3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) who is committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and who remains in such facility upon attaining 20 years of age shall be subject to an assessment by the board."

The board is enlisted under section 6358 to assess whether the juvenile should receive a civil commitment under Act 21. Act 21 was enacted to provide: "rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to

the public and further provides for additional periods of commitment for involuntary treatment for said persons." 42 Pa.C.S. §6401.

Before a person can be subject to the procedures of Act 21, three criteria must be met. 42 Pa.C.S. §6403(a). First, the person must have been a juvenile adjudicated delinquent for an act of sexual violence which, if committed by an adult, would be a violation of certain sexual offenses. The juvenile meets this criteria, having been adjudicated on two counts of indecent assault under section 3126 of the Crimes Code. See section 6402 of Act 21 and section 6358(a). Secondly, the person must have been committed to a juvenile facility or institution and remain at that institution when the person reaches 20 years of age. Section 6403(a)(2). Third, the person must be in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." Section 6403(a)(3).

The assessment under section 6358 determines whether the third criterion of Act 21 is met. Because a person cannot be subject to the provisions of Act 21 unless all three criteria of section 6403(a) are met, section 6358 mandates that the first two criteria of section 6403 be present before an assessment can be required.

The issue raised is one of statutory construction. *In the Interest of C.A., A Minor Child,* 961 A.2d 172, 174 (Pa. Super. 2008); *In the Interest of K.A.P.,* 916 A.2d 1152 (Pa. Super. 2007), *affirmed,* 596 Pa. 351, 943 A.2d 262 (2008). *In the Interest of C.A.,* the Superior Court set forth the standard of review for statutory construction:

"Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent, In pursuing that end, we are mindful that 'when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 Pa.C.S. §1921(b). Indeed, as a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, 'words and phrases shall be construed according to rules of grammar and according to their common and approved usage,' while any words or phrases that have acquired a 'peculiar and appropriate meaning' must be construed according to that meaning. 1 Pa.C.S. 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, inter alia: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. §1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. §1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

"Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, inter alia, the following presumptions: that

the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. §1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. §1901.

"*Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189a 190 (2005). (some citations omitted)" 961 A.2d at 174.

It is apparent from a reading of Act 21 that its application pertains to those persons who have serious and continual sexual dysfunction, that is, those who are unable or unwilling to control themselves. Treatment for these persons is ongoing and may continue for an extended time. Because the Juvenile Court loses jurisdiction and is without authority to continue supervision once a juvenile offender turns 21 years of age, Act 21 provides means for continuing supervision and treatment for as long as is necessary.

The criteria set forth in section 6403 is therefore geared toward identifying the serious offenders, those who continue to pose a risk to the community. While the assessment is the best method for making these identifications, it is invasive. Accordingly it has been limited by the General Assembly to those persons who otherwise appear to pose a threat, namely, those persons who have already been found to have committed an act of sexual violence and who continue to require commitment due to their dysfunction.

Looked at another way, under section 6352(a) of the Juvenile Act,[6] all dispositions by the court are required to be, among other things, "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare." A person with the level of dysfunction contemplated by Act 21 is by implication one who continues to pose a danger to the community, and therefore one who should remain in placement until the dysfunction is addressed. In those cases where the commitment continues through the person's 20th birthday, there remains an appreciable concern that the dysfunction is present and will continue beyond the person's 21st birthday. Act 21 is then implicated. Conversely, a person who may have been initially placed but then is released back into the community is one that the court has deemed can function without further need for placement. Accordingly, the phrase "remains in the institution or other facility upon obtaining 20 years of age" contemplates an ongoing placement.[7]

In this case, the juvenile has been known to the juvenile justice system for a period of almost five years at the time the April 21, 2010 order was executed. During

---

6. 42 Pa.C.S. §6352(a).

7. Our determination that the placement required to qualify for an assessment is an "ongoing" placement should not, however, be considered a mandate in every case that the placement must be continual from the time of adjudication through the 20th birthday anniversary. Temporary therapeutic alternatives imposed by a court for valid reasons may, in the right set of circumstances, be considered "ongoing." There may also be cases where a court initially places a juvenile on probation with outpatient treatment, but revisits the issue at a later hearing, and determines that a commitment is necessary, with the commitment extending through the 20th birthday. Whether these types of cases would also be deemed "ongoing placement" is not before this court.

that time, the juvenile committed several criminal acts, violated his probation on several occasions, and received several placements. While some of these court actions addressed the juvenile's sexual dysfunction, other actions were disciplinary in nature or dealt with other needs, such as drug rehabilitation. Moreover, the juvenile was released on several occasions into the community to reside with his family, continuing with sexual counseling on an outpatient basis. The county has not demonstrated that the juvenile's placement as of his 20th birthday was part of an ongoing commitment stemming from his indecent assault adjudications or that the current placement was ordered to address continual sexual dysfunction concerns.

The county has not sustained its burden that the juvenile remained in a facility from the time of his commitment on the indecent assault charges until his 20th birthday. The order executed April 21, 2010 was without foundation and shall be rescinded. We enter the following order:

## AMENDED ORDER

And now, September 13, 2010, upon consideration of the petition of the juvenile, S.R.R., to rescind the court's order of April 21, 2010 and the motion of the county of Berks Juvenile Probation office to quash the petition of S.R.R., responses thereto, briefs filed by the parties and after argument held, the petition of S.R.R. is granted. The order entered by the Berks County court dated April 21, 2010 is hereby rescinded. The county's motion to quash is denied.