J-A08035-25                    2026 PA Super 54

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SECARIO GOODWIN, :
:
Appellant : No. 2030 EDA 2024

Appeal from the Judgment of Sentence Entered June 25, 2024
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000066-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.: **FILED MARCH 19, 2026**

Secario Goodwin ("Goodwin") appeals from the judgment of sentence imposed following his violation of probation. We affirm in part, vacate in part, and remand for resentencing.

The court which found Goodwin committed multiple, technical probation violations (the "VOP court") provided the following summary of the facts relevant to this appeal:

> In August of 2022, [Goodwin] was charged with [multiple counts of burglary, criminal trespass, theft by unlawful taking and receiving stolen property, and single counts of related offenses]. The charges arose from a series of burglaries at several auto shops[.]
>
> At the time of his arrest, [Goodwin] was on bail in case No. 102 Criminal 2022, for crimes committed in 2021. On September 13, 2022, after pleading guilty, [Goodwin] was sentenced in that case to incarceration of one month to one year, followed by two years of probation. He was paroled [in October 2022].
>
> [In August 2023, Goodwin] pled guilty in this case to [burglary, theft by unlawful taking, and criminal mischief]. . . .

[In November 2023, Goodwin] was sentenced to five years' restrictive probation[,] . . . a consecutive two-year period of probation[,] . . . and a fine . . .. The restrictive condition of [Goodwin's] five-year probation was the successful completion of the two-week Outmate Program,[2] when and as directed by the Monroe County Probation Office. . ..

> [2] The Outmate Program entails a determinate, two-week period of incarceration in the Monroe County Correctional Facility ("MCCF"). Each day, the defendant-restrictive probationer performs community service outside the prison . . . and is then returned to the correctional facility and the custody and control of MCCF personnel. . ..

After sentence was imposed, [Goodwin] met with his probation officer and was provided with the rules of probation. At that time, [Goodwin] was on probation in both this case and case No. 102. Subsequently, his probation was transferred to Allegheny County.

At some point thereafter, [Goodwin] left Allegheny County and traveled to North Carolina. Accordingly, on March 25, 2024, Allegheny County returned supervision, reporting that [Goodwin] no longer resided there.

[Goodwin] neither sought nor was given permission to leave the Commonwealth and did not advise his probation officer of the move. [Goodwin's] probation officer did not learn that [Goodwin] had traveled to North Carolina until three weeks later when [Goodwin's] mother advised him of where [Goodwin] was. Even then, [Goodwin's] probation officer did not jump to fil[e] a violation petition. Instead, the officer attempted to transfer the case to North Carolina. However, North Carolina declined to accept the transfer because [Goodwin's] mother – whose residence was [Goodwin's] home plan – said that [Goodwin] could not reside with her.

After North Carolina denied the transfer, [Goodwin's] probation officer directed [Goodwin] to return to Pennsylvania and meet with him so that a solution could be fashioned. Had [Goodwin] returned, a violation [of probation] petition would not have been filed. Unfortunately, [Goodwin] did not accept the invitation and did not voluntarily return to the Commonwealth.

- 2 -

Accordingly, [in April] 2024, the Monroe County Probation Department lodged a detainer.

Two days later, the Commonwealth filed the instant probation violation petition. The petition alleged four . . . violations:

1. Failure to report to the Monroe County Probation Department on March 27, 2024, as directed by his Probation Officer.

2. Failure to comply with all municipal, county, state, and federal criminal laws, in that on February 25, 2024, [Goodwin] was charged with [s]imple [a]ssault . . . in Allegheny County.

3. Leaving the Commonwealth without prior permission from his Probation Officer and failing to return.

4. Failure to complete the Outmate Program by March 16, 2024, and therefore, failure to comply with the special condition imposed by this Court.

(Petition for Violation of Probation, filed April 11, 2024, ¶ 7).

A violation hearing was scheduled for and convened on May 13, 2024. [Goodwin] failed to appear. Accordingly, a bench warrant was issued.

[In April 2024, Goodwin] was arrested and incarcerated in North Carolina. The authorities in North Carolina informed the Commonwealth that . . . initially . . . [Goodwin] declined to waive extradition.

On June 11, 2024, . . . the day the Act 44 probation reform amendments[1] became effective, [Goodwin] reversed course and waived extradition. [Goodwin] was subsequently returned to the Commonwealth and the jurisdiction of this [c]ourt.

[In June 2024], a probation violation hearing was convened. During the hearing, the Commonwealth withdrew the violation

_____

[1] *See* 42 Pa.C.S.A. § 9771, effective June 11, 2024.

- 3 -

based on [Goodwin's] arrest as [to] the charges in Allegheny County[.] [Goodwin] made a voluntary, knowing, intelligently counseled admission to the three remaining violations. At the conclusion of the hearing, [the court] issued an order revoking probation and resentencing [Goodwin] to one to two years' incarceration in a state correctional facility. . .. In addition, [Goodwin] was deemed eligible for the three major rehabilitative programs available in the state prison system . . ..

[In July 2024, Goodwin] filed a motion for reconsideration of the resentence. A hearing on the motion was convened [later that month]. Counsel presented argument, and both [Goodwin] and [Goodwin's] probation officer addressed the [c]ourt. At the conclusion of the hearing, [the court] issued an order denying [Goodwin's] motion to reconsider the sentence. [Goodwin] then timely filed this appeal.

*See* VOP Court Opinion, 10/11/24, at 2-5 (record citations and one footnote

omitted).[2]

On appeal, Goodwin raises three issues for this Court's review:

1. Whether the [VOP] court erred in revoking [Goodwin's] probation solely for technical violations that did not establish [Goodwin's] willful or flagrant disrespect for the terms of his probation but rather were consequences of [Goodwin's] temporary homelessness?

2. Whether the [VOP] court erred when it sentenced [Goodwin] to a period of total confinement without statutory authority to do so, as none of the enumerated conditions in 42 Pa.C.S.[A. §] 9771(c)(1)(i)-(iii) ha[d] been met?

3. Whether the [VOP] court imposed an illegal sentence and failed to follow the recidivist philosophy intended by the legislature's carefully[-]graduated sentencing sanctions in 42 Pa.C.S.[A. §] 9771(c)(2) when it stacked three technical violations in [Goodwin's] first probation violation petition and resentenced [Goodwin] under 42 Pa.C.S.[A. §] 9771(c)(2)(iii) instead of

_____

[2] Goodwin and the court complied with Pa.R.A.P. 1925.

imposing the 14-day maximum period for a first technical violation and allowing [Goodwin] an opportunity to reform?

Goodwin's Brief at 5.

Goodwin's first issue implicates the revocation of his probation. When reviewing a court's decision to revoke probation, this Court will not disturb the decision absent an error of law or abuse of discretion. ***See Commonwealth v. Gillam***, 233 A.3d 863, 867 (Pa. Super. 2020).[3] ***Accord Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (in a sufficiency review, this Court may not weigh the evidence and substitute its judgment for that of the fact-finder).[4] In reviewing challenges to the revocation of probation, this Court applies the following standard:

> When assessing whether to revoke probation, the [court] must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by preponderance of the evidence that the defendant violated his probation.

***Commonwealth v. Stewart***, 327 A.3d 301, 304 (Pa. Super. 2024) (citation omitted).

---

[3] An abuse of discretion is more than a mere error of judgment and will only be found where the court misapplies the law, exercises manifestly unreasonable judgment, or its conclusion is the result of partiality, prejudice, bias or ill-will. ***See Commonwealth v. Montalvo-Rivera***, 341 A.3d 159, 168 (Pa. Super. 2025).

[4] Goodwin's assertion the evidence failed to establish a flagrant or willful disrespect to support the revocation of probation is a sufficiency challenge.

A VOP court may impose reasonable conditions of probation. ***See***, ***e.g.***, ***Commonwealth v. Starr***, 234 A.3d 755, 761 (Pa. Super. 2020). If a condition of probation is not followed, section 9771(b) of the Sentencing Code "grants the court the authority to revoke an order of probation upon proof of the violation of specified conditions of the probation." ***See id***. (citing 42 Pa.C.S.A. § 9771(b)). To revoke probation, a court must find by a preponderance of the evidence the probationer violated a specific condition of probation or committed a new crime. ***See Commonwealth v. Foster***, 214 A.3d 1240, 1243 (Pa. 2019).

Goodwin concedes technical violations of probation can support a prison sentence where a probationer's conduct is flagrant and indicates an inability to reform. ***See*** Goodwin's Brief at 16, citing ***Commonwealth v. Carver***, 923 A.2d 495, 498 (Pa. Super. 2007). He argues, however, that his brief period of unemployment resulting from poverty and other technical probation violations did not meet the standards for imposing a prison term. ***See*** Goodwin's Brief at 16-25, citing, *inter alia*, ***Commonwealth v. Tompkins***, 2019 WL 5581541 (Pa. Super. 2019) (unpublished memorandum).[5]

The VOP court found the Commonwealth showed by a preponderance of the evidence that Goodwin committed multiple, flagrant technical violations

---

[5] Pursuant to Pa.R.A.P. 126(b), unpublished memoranda filed by this Court after May 1, 2019, may be cited for their persuasive value.

which established his inability to reform and supported its imposition of a prison sentence. The VOP court specifically found Goodwin did not establish he was homeless to "the extent or for the duration that he could not comply with the terms of his probation or follow the directives of his probation officer." *See* VOP Court Opinion, 10/11/24, at 7 (noting counsel's admission Goodwin had a home in Pennsylvania, and Goodwin's probation officer's testimony Goodwin did not inform him he had become homeless). *See id*. at 11-12.[6] Additionally, the VOP court relied on Goodwin's probation officer's testimony to find technical violations. The VOP court specifically noted Goodwin provided an incorrect address for his aunt's Pennsylvania home, and Goodwin's deliberate choice not to return to Pennsylvania to participate in the Outmate program, a requirement of his criminal sentence, despite his probation officer's equitable offer not to violate Goodwin if he returned to Pennsylvania to begin the program. *See* VOP Court Opinion, 10/11/24, at 7-8, citing N.T., 7/23/24, at 11-13.[7] The VOP court also noted the absence of evidence

_____

[6] The VOP court stated its concern about Goodwin's inconsistent statements regarding his residence. *See* VOP Court Opinion, 10/11/24, at 7 (stating "[a]t times, when it suited him to say so, [Goodwin] told his probation officer and his attorney that he had a home, first, with his mother in North Carolina, then, later with his aunt here in Monroe County. However, neither was true. At other times when it suited him, [Goodwin] stated he was homeless. [Goodwin] cannot have it both ways").

[7] We are not free to re-weigh the probation revocation court's factual findings on appeal. See *Gillam*, 233 A.3d at 867; *Antidormi*, 84 A.3d at 756.

Goodwin could not participate in the Outmate program. *See id*. at 9.[8] Not only did Goodwin not accept the offer, but when a warrant was finally issued he initially refused to waive extradition to Pennsylvania to face the VOP violation.

The VOP court also concluded Goodwin knowingly committed multiple probation violations undermining the likelihood of rehabilitation:

> [Goodwin's] multiple violations were significant, not minor as he has implied. At the time he committed the violations, [Goodwin] had, between case No. 102 and this case, been on supervision for almost 18 months. He was well aware of the conditions of his sentence and of his probation as well as the rules of supervision. Nonetheless, he failed to attend the Outmate Program, an individualized sentencing requirement that he was specifically court-ordered to complete. He also violated two general conditions of his probation. By doing so he rebelled against supervision and undermined both the Probation Department's ability to supervise him and his potential to rehabilitate.

*See id*. at 9. The VOP court concluded Goodwin's dishonesty, "selective statements regarding homelessness," failure to participate in the Outmate program, and initial failure to waive extradition demonstrated a willful and flagrant disregard for the terms and conditions of probation and showed he was not amendable to probationary supervision. *See id*. at 9.

The VOP court properly exercised its discretion in finding Goodwin committed probation violations and rejected Goodwin's attempt to portray the

---

[8] Further, the court noted that participation in the Outmate Program would have given Goodwin a residence for two weeks, and could have temporarily alleviated his asserted homelessness. *See* VOP Court Opinion, 10/11/24, at 8-9.

revocation of his probation and resulting term of imprisonment as a sanction for his status as poor and homeless. Goodwin, who knew the rules of probation, failed to contact his probation officer before or after leaving the Commonwealth, and failed to attend the mandated Outmate program. That evidence established Goodwin committed flagrant probation violations supporting probation revocation and imprisonment. Goodwin's first claim does not merit relief. *See Foster*, 214 A.3d at 1243.

Goodwin's second and third issues assert the court lacked the statutory authority under 42 Pa.C.S.A. § 9771(c)(1)(i)-(iii) to impose a sentence of total confinement, and it imposed an illegal term of imprisonment for Goodwin's first technical violation of probation. We address these related claims together.

Section 9771 deals with revocation of probation, and in June 2024, substantial revisions to 42 Pa.C.S.A. § 9771(c), **Limitations on sentence of total confinement** ("Section 9771"), became effective. The revised statute eliminates "vindication of the court's authority" as a ground for imposing a prison sentence for a technical violation of probation. The revised statute also articulates a presumption *against* a sentence of total confinement for a technical violation, sets forth a list of the limited grounds upon which a technical violation can support a sentence of imprisonment and, relevant to Goodwin's challenge to his sentence, limits the length of the sentence a court can impose for first and second technical probation violations. The clear

animating principle of the revisions to Section 9771 is to limit the bases to impose a term of total confinement for technical probation violations, thereby culling the prison population of technical probation violators.

At the outset, we note that this Court has now held, in **Commonwealth v. Seals**, 2026 Pa. Super 29 (Pa. Super., filed February 17, 2026) (*en banc*), that a claim a court failed to follow the limitations imposed by Section 9771(c) raises a challenge to the legality of sentence. **See id**. at 3, 29.

Relating to incarceration for technical probation violations, the amended statute provides in pertinent part:

> **(c) Limitation on sentence of total confinement.--**There is a presumption against total confinement for technical violations of probation. The following shall apply:
>
> (1) The court may impose a sentence of total confinement upon revocation only if:
>
> * * * * *
>
> > (iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
> >
> > * * * * *
> >
> > > (E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.
> > >
> > > (F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same

episode of events shall not constitute separate technical violations.

42 Pa.C.S.A. § 9771.

With regard to the length of sentence, an amended version of Section 9771(c), effective June 11, 2024, provides in pertinent part:

(2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical violations under paragraph (1)(ii) or (iii) . . . . [t]he defendant shall be sentenced as follows:

(i) For a first technical violation, a maximum period of 14 days.

(ii) For a second technical violation, a maximum period of 30 days.

(iii) For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing.

42 Pa.C.S.A. § 9771(c)(2).

Goodwin asserts imprisonment should not be the default punishment for "minor[,] technical" violations, and cites a state senator's comments concerning the purpose of amending the statute:

Probation is supposed to be a pathway out of the criminal justice system. Instead, Pennsylvania is adding more and more people to community supervision and keeping them stuck there. The broken system has frequently become a probation-to-prison revolving door that is in desperate need of reform. Under the current probation system, ***technical violations, which are not actual crimes -- such as being late for an appointment, traveling out of state, or being unable to pay fines and restitution -- can lead to excessive extensions of probation or prison time that far exceeded the original sentence handed down at trial.*** This approach has proven both ineffective at making our neighborhoods safer and significantly expensive for taxpayers. ***If a probationer violates his or her***

> ***probation terms in some minor[,] technical way, the***
> ***result should not be simply to lock them away.*** We
> need a system that better matches the punishment to the
> offense and rewards good behavior.

*See* Goodwin's Brief at 27-28, quoting Pennsylvania Senate Journal, 2023 Reg. Sess. No. 32 (remarks of Senator Bartolotta) (emphasis added). Goodwin further asserts that subsections (E) and (F) of Section 9771(c)(1)(iii), that permit total confinement for technical violations, require a finding by a preponderance of the evidence the defendant "cannot be safely diverted from total confinement through less restrictive means," and argues the VOP court did not assess this portion of the statute. *See* Goodwin's Brief at 28-32.

Goodwin next asserts all his technical violations must be regarded as a single technical violation under Section 9771(c), and the VOP court abused its discretion by imposing a one-to-two-year sentence for "a third or subsequent technical violation." *See* Goodwin's Brief at 32-52. Goodwin claims Section 9771 contains ambiguous and contrary provisions concerning the phrase "technical violation." *See* Goodwin's Brief at 34 (comparing 9771(c)(2)'s reference to the commission of "one or more technical violations under paragraph (1)(ii) or (iii)" to the reference in (c)(1)(ii), stating a presumption against incarceration for the commission of "a technical violation"). Goodwin also cites the language of section 9771(c)(1)(iii)(F), which states that "[f]or purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations," ***see***

Goodwin's Brief at 33, as evidence that all technical violations are to be considered as a single violation.

Goodwin states Section 9771(c)(2) is ambiguous as to "sequential[ity]," *i.e.*, whether the statute intends a recidivist philosophy affording a defendant the opportunity to reform his conduct before receiving an enhanced sentence for serial violations, because it does not state whether previous violations had to occur **before** the instant hearing to be regarded as separate technical violations. **See** Goodwin's Brief at 34-52. Finally, Goodwin asserts that a contrary interpretation of the statute would be absurd and result in instances in which a court could impose three maximum sentences in a single sentencing order. **See** Goodwin's Brief at 39-40.

The VOP court asserts it did consider the "less restrictive means" provision of section 9771(c)(1)(iii)(E), but found Goodwin's actions "demonstrated a flagrant and willful disregard for[,] and a lack of amenability to[,] probationary supervision." **See** VOP Court Opinion, 10/11/24, at 20 (noting that these were not minor technical violations of probation). The court further states it had the authority to impose a sentence of one to two years of imprisonment because Goodwin's three technical violations were not part of the same "episode of events." **See** VOP Court Opinion, 10/11/24, at 10, 12-18 (tracking the language of section 9771(c)(1)(iii)(F)). The court reasons that Section 9771.1, which Goodwin does not cite, addresses court-imposed sanctions for violating probation, and embodies a recidivist philosophy with

graded short punishments for probation violations. It states the legislature could have, but did not, "set up the same scheme" in Section 9771 it used in Section 9771.1. **See** VOP Court Opinion, 10/11/24, at 18-20.

We hold the trial court did not commit legal error when it found as a general principle that less restrictive means than imprisonment would not deter Goodwin, and that a term of imprisonment was appropriate. Based on the facts relied on by the VOP court, for all intents and purposes Goodwin failed to comply with his sentence early on in his probation. Goodwin was provided his conditions of probation, and made aware of his need to complete the Outmate program, a condition of his sentence he never completed. His probation was transferred to Allegheny County, and Goodwin, without asking permission from his probation officers from either county, absconded from Pennsylvania and went to North Carolina. His Monroe County probation officer had to track him down, and gave him the opportunity to return to Pennsylvania without violating him; yet Goodwin still failed to return from North Carolina of his own volition. Further, Goodwin lied about his housing, continually failed to contact his probation officer, refused extradition from North Carolina, and failed to attend the Outmate program. Goodwin's conduct showed he was not amenable to probationary supervision and nothing short of imprisonment would suffice to deter his illegal conduct.

As the VOP court noted, this was not the **minor** misconduct Senator Bartolotta stated should not result in imprisonment: Goodwin did not merely

- 14 -

arrive late for an appointment, travel briefly outside of the Commonwealth, or fail to pay fines and restitution. Instead, Goodwin purposefully left the Commonwealth without permission and despite knowing his reporting obligation, did not contact his probation officer to explain or seek help, and elected not to participate in the mandatory Outmate program. Despite having been granted probation which came with conditions and obligations, Goodwin chose not to meet any of those conditions or obligations, even when given the opportunity to return and start over without a violation. Goodwin's repeated conduct of non-compliance showed that nothing short of imprisonment could compel his compliance. Thus, no relief is due on Goodwin's second claim: *i.e.*, that the court abused its discretion by imposing a term of total confinement.

However, although we agree with the VOP court's factual findings that Goodwin's deliberate conduct violated his probation, we conclude the VOP court erred as a matter of law in imposing a one-to-two year term of imprisonment for a third technical probation violation, as the Commonwealth itself concedes. **See** Commonwealth's Brief at 27-31. We do not find Section 9771 ambiguous on its face, nor do we perceive a need to interpret the statute in light of Section 9771.1 and its sentencing provisions. Section 9771.1 authorizes each court of common pleas to **establish a program** to impose sanctions for probation violations and specifies sanctions of three days imprisonment for a first violation, seven days for a second, fourteen days for a third, and twenty-one days for a fourth or subsequent violation. **See** 42

Pa.C.S.A. §9771.1(a), (g)(1)(i)-(iv). There is no evidence of record Monroe County has ever established a program pursuant to Section 9771.1. For that reason alone, we have no recourse to use that statute to interpret Section 9771.

Additionally, although the trial court is correct that there is no **_logical_** impediment to construing Goodwin's actions as three separate, technical probation violations (Goodwin absconded, failed to report to his probation officer, and failed to attend the Outmate program), and these were not the same "episode of events," there may be a **_legal_** impediment to treating those three violations independently for sentencing purposes. We recognize the possibility of a latent ambiguity in the statute arising from Section 9771(c)(1)(iii)(F)'s authorization of incarceration if "the technical violation involved" conduct on three or more separate occasions, raising the question whether "a first technical violation" under 9771(c)(2)(i) similarly refers to a finding of a technical violation rather than separate instances of conduct. **_See Commonwealth v. Linton_**, 337 A.3d 467, 477 (Pa. 2025) (recognizing that a seemingly unambiguous phrase can be ambiguous when placed in context); **_A.S. v. Pennsylvania State Police_**, 143 A.3d 896, 906 (Pa. 2016) (same).

Accordingly, we examine Section 9772(c)(2) in the context of the statute's purpose and context, the harm to be remedied, the object to be attained, and related laws to determine the General Assembly's intent. **_See_** 1 Pa.C.S.A. § 1921. Multiple statutes that became effective on the same day

as Section 9771 manifest the Legislature's intent to limit the conditions under which Pennsylvanians receive terms of incarceration for technical probation violations, and to afford probation violators the opportunity to correct their conduct before receiving lengthy jail terms for technical violations. ***See e.g.***, 42 Pa.C.S.A. § 9763(b) (adding language to existing statute addressing conditions of probation that requires courts imposing probation conditions to "attach only those conditions that the court deems necessary and the least restrictive means available to promote the defendant's rehabilitation and protection of the public"); Section 9771(b.1) (adding to the statute a subsection precluding a court from revoking probation for non-payment of fines unless the defendant is financially able to pay the fines and has willfully refused to do so); Section 9774.1(b) (establishing a mandatory probation review conference following a defendant's service of a term of probation or 50% of the probation sentence, whichever is sooner); Section 9774.1(c)(1)(i)-(vii) (creating a statute entitled "Probation review conference" that requires an accelerated early review conference where a defendant has completed an educational and/or training program or any other court-approved condition that "substantially assists the defendant in leading a law-abiding life or furthers the rehabilitative needs of the defendant); Section 9774.1(f)(1)(i)-(iii), (h) (adding a "termination of probation" subsection that provides a court shall terminate probation immediately following the probation review conference absent proof that while on probation the defendant "created an

identifiable threat to public safety," failed to complete a court-ordered treatment program, or failed to pay restitution).

Applying the relevant principles of statutory interpretation, we readily determine Section 9771(c)(2) demonstrates a recidivist philosophy and the intent of the legislature to curtail long terms of imprisonment based on the conclusion that, on balance, terms of imprisonment for technical probation violations cause undue expense without enhancing the protection of the public.[9]  Recidivist provisions require a violator be given the opportunity to reform his conduct before receiving a more severe sentence for repeated violations.  As the Supreme Court explained in discussing a different recidivist sentencing provision, "the point of sentencing enhancement is to punish more severely offenders who have persevered in criminal activity **despite the theoretical beneficial effects of penal discipline**."  **Commonwealth v. Shiffler**, 879 A.2d 185, 195 (Pa. 2005) (citation omitted, original emphasis).  As the Court further explained, "[a]ny other conception would ignore the rationale underlying the recidivist philosophy, *i.e.*, that the most culpable defendant is one who, after being reproved, still hardeneth his neck."  **Id**. (citations and internal quotation marks omitted).

---

[9] We thus see no need for the review of legislative history Goodwin proposes. Where a statute is unambiguous, there is no need to examine legislative history to determine its meaning. **See Commonwealth v. Aguilar**, 340 A.3d 311, 323 (Pa. Super. 2025) (stating that our courts "must not overlabor to detect or manufacture ambiguity where there is none").

Because the legislature clearly intended the statue at issue to reflect a recidivist philosophy, we agree with Goodwin it would be an absurd and unintended result to allow the VOP court in effect to give Goodwin three separate maximum sentences at the same, first hearing on his multiple, technical probation violations. While we agree with the trial court's holding that Goodwin's technical violations were flagrant and significant in nature - and if presented to the trial court on an individual basis each would undoubtedly have constituted an independent technical violation allowing for graduated punishment under the latest statutory scheme - the new statutory scheme leaves no alternative but to conclude the trial court erred in imposing a one-to-two-year term of imprisonment at the hearing for Goodwin's three technical violations because those violations were presented to the court collectively rather than individually. ***See also Seals***, 2026 Pa Super 29 at 16-17, 29 (declaring Section 9771(c)(2) specifically delineates the maximum sentence for first and second technical violations – a maximum of fourteen days for a first violation and thirty days for a second violation – and any sentence in excess of those maximums is illegal).[10]

_____

[10] Although compelled to follow the latest revisions to the sentencing statute, we note this new regimen may not have its intended effect of reducing the incarceration of those who commit technical violations. Instead, the changes create a disincentive for thoughtful probation officers, similar to the probation officer in the instant matter, to exercise their discretion and afford the benefit of the doubt to probationers who commit technical violations. Instead of encouraging an informal out-of-court warning system, the tiered, recidivist

*(Footnote Continued Next Page)*

For these reasons, we agree with both parties that the trial court erred in finding each of Goodwin's three technical violations constituted separate sentencing enhancements and imposing a sentence of one to two years of imprisonment without affording Goodwin the opportunity to conform his conduct to law after a first (or second) lesser sentence for a technical violation. Accordingly, we affirm the court's findings regarding Goodwin's technical violations, but vacate Goodwin's sentence, and remand for resentencing consistent with Section 9771(c)(2).

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2026

---

statute creates a pressure for probation officers to initiate court proceedings for **any** technical violation, thus, potentially clogging the court dockets and stripping the courts and probation officers of their discretion to manage probationers. We are hard-pressed to believe technical probation violators will be better served by the practice of the graduated system of punishment the statutory revisions compel.